56 So.2d 641

## TIDWELL v. WALKER COUNTY MINING & INV. CO.

### 6 Div. 118.

Supreme Court of Alabama.

Jan. 17, 1952.

Tom D. F. Bevill, Jasper, for appellant.

Bankhead, Skinner & Kilgore, Jasper, for appellee.

LAWSON, Justice.

Review by certiorari of a judgment in a workmen's compensation suit wherein the court denied compensation to the plaintiff on the ground that he was not an employee of the defendant at the time he received his injury, but was an independent contractor.

■■ In brief of counsel for petitioner it is said: "There was evidence from which the trial court could clearly find and hold that the Walker County Mining and Investment Company was under the workmen's compensation law of Alabama, the employer of Ulas S. Tidwell, so that they would be liable for compensation for his injuries." This statement, together with the fact that in the brief filed on behalf of petitioner emphasis is placed on the evidence favorable to petitioner, with little or no mention being made of the evidence tending to support the judgment of the trial court, causes us to again refer to the rule so often stated that in this character of review we are not concerned with the weight of the evidence. Our duty is simply to ascertain whether there was any evidence to sustain the conclusion of the trial court that petitioner was not an employee of the Walker County Mining and Investment Company at the time he was injured. If any reasonable view of the evidence supports such conclusion, then the judgment will not be disturbed. Riddle v. Smith, 252 Ala. 369, 41 So.2d 288, and cases cited.

■ This court is fully committed to the principle that it is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relation between the parties is that of an independent contractor or of employer and employee—master and servant. Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608; Riddle v. Smith, supra.

■ Likewise, this court is firmly committed to the proposition that if there is no evidence that defendant reserved no control, except an inference from the circumstances, the question is one for the trier of fact. Tuscaloosa Veneer Co. v. Martin, supra.

The essential findings by the trial court were as follows:

"The original contract, which was an oral agreement, was made by the defendant and one of the members of the partnership, namely J. C. Windham, and that the plaintiff was not present at the time the contract was entered into. That after the contract had been in force for some time one of the partners, Guttery [Guthrie], withdrew from the partnership and that the

contract was carried on by the plaintiff and his partner, J. C. Windham. The contract was to run for a period of one year, but had continued in effect for more than a period of one year at the time the plaintiff sustained his injury.

"The evidence shows and the court finds that under the original agreement the plaintiff and his partners were to mine the coal when it could be sold from the mine which was under lease to the defendant; that the plaintiff and his partners worked for a while by themselves, that is only the members of the partnership worked, but that they later employed a number of helpers and that the defendant had no control over the hiring or firing of these men, the amount of their wages, or any other supervision over the employment of the men who worked for the partnership. The plaintiff and his partners paid for the inspection of the mine, and the defendant's agents seldom if ever entered into the mine and gave no directions as to where the plaintiff or his employees were to work. The plaintiff was to produce coal when the bins were empty, and the plaintiff kept a man on the outside to operate the lift, it being the duty of the partnership to deliver the coal into the bins, at which point the plaintiff and his partners ceased to have any control over the coal. The defendant maintained a checker to keep an account of the amount of coal produced.

"The plaintiff and his partners were first paid the sum of $2.25 per ton for the coal produced, under which arrangement the defendant furnished fuel for the operation of the pump and the lift. Under a later arrangement, the plaintiff and his partners furnished all the fuel and their pay per ton of coal produced was increased from $2.25 to $2.45 per ton. The defendants owned the rail and the cars used in the operation of the mine and also furnished the pump and the lift, with the agreement that the plaintiff and his partners would keep said equipment in good repair. When the mine was first opened, the plaintiff and his partners were paid the sum of one hundred dollars by the defendant for the laying of the track into the mine.

"The defendant paid the tonnage tax on the coal, and the plaintiff and his partners paid all expense of operating the mine, together with the withholding tax, social security tax, union dues and payments to the miner's welfare fund, and other obligations. The employees of the plaintiff and his partners were paid a certain amount per car of coal mined, and the partnership kept all the books on the mining operation and the defendant had nothing to do with this part of the operation.

"Mr. J. C. Windham, the partner of the plaintiff who made the original contract, testified that mine operation was not subject to the supervision of the agents of the defendant, and the evidence does not show that said agents supervised the operation other than the fact that they were occasionally around the mine, and on one occasion one of defendant's agents stated that the water must be got out of the mine.

"After the plaintiff was injured, his partner continued to pay him his share of the profits from the operation of the mine, after all expenses were paid. The evidence further shows that the plaintiff and his partner took out compensation insurance on the employees in the mine and paid the premium, and one of the partners in the presence of the other inquired about the insurance taken out, as to whether the policy would cover the partners, and they were advised it would not. The evidence shows that Mr. Farris, President of the defendant corporation, suggested that the compensation insurance should be taken out, and Mr. Hunter, another officer of the Company, went to Birmingham with the plaintiff and his partner for the purpose of obtaining the insurance, Mr. Farris having stated that if anyone was injured they 'might all be sued.'

"The evidence shows that the plaintiff sustained a minor injury some months prior to the injury sued for in this case; that he made no effort to collect compensation from the defendant, but did inquire of Mr. Farris, an official of the defendant company, if he could not collect compensation insurance through a policy then carried by the defendant company on a strip pit opera-

tion. Upon being advised he could not, he made no further effort to collect compensation from the defendant company.

"The plaintiff and his partners furnished all supplies, tools, fuel, timbers, mules, powder, and everything else necessary for the successful operation of the mine at the time the plaintiff sustained his injury. It will be noted that the plaintiff's partner, who is now in the employee of the defendant, testified in this case for the defendant, and he was the one who in fact made the contract with the officers of the defendant corporation."

We have examined the evidence with much care and are clear to the conclusion that in all material respects, the finding of fact made by the trial court is amply supported by the evidence.

As before pointed out, the pivotal question in a case of this kind is whether or not the company reserved the right of control as to the means and agencies by which the work was to be accomplished or over the means and agencies by which the result was to be reached.

 Windham, one of the partners, as shown in the trial court's finding of fact, was the only member of the partnership who took part in the negotiations leading up to the agreement. His testimony is positive to the effect that there was no right of control reserved by the company. The evidence as it bears on the method of operation in our opinion fully supports the conclusion reached by the trial court.

The Walker County Mining and Investment Company, prior to the time this mine was opened, had never engaged in any underground mining activity. The evidence fully supports a finding that none of its officers were familiar with the mining operations and the evidence is without contradiction to the effect that the members of the partnership were all miners of many years experience. We think the evidence fully supports the finding that it was the intention of the parties that in so far as the mining operation was concerned, that is, the extraction of coal from beneath the surface of the earth, the partnership was to have full and complete control of

that operation without any right of supervision on the part of the mining company.

The trial court, upon a consideration of all the evidence, has found that the plaintiff and his partners were independent contractors at the time plaintiff received his injury, and on a review of the evidence we are of the opinion that there were some inferences to be drawn from the evidence tending to support the finding of the trial court. We will not, therefore, under our uniform rulings, disturb the findings of the trial court. On this appeal no other question is argued, and we have confined our opinion to the single question here argued.

It therefore follows that there is no error in the record and the judgment appealed from must be affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.